IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2010 AUG -3 PM 4: 09

CLERK_____
SO. DIST. OF GA.

| | | |
|---|---|---|
| PORTER WILKES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 109-149 |
| | ) | |
| BRIAN OWENS, Commissioner, Georgia | ) | |
| Department of Corrections, et al., | ) | |
| | ) | |
| Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Porter Wilkes, an inmate currently incarcerated at Wheeler Correctional Facility in Alamo, Georgia, filed the above-captioned petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is currently before the Court on Petitioner's motion for a stay and abeyance of his federal petition (doc. no. 4) and "Application for the Presumption of Correctness" (doc. no. 6), as well as Respondents' motion to dismiss (doc. no. 14). Respondents oppose both of Petitioner's motions (doc. no. 15), and Petitioner opposes the motion to dismiss (doc. no. 17). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Petitioner's motions be **DENIED**, that the motion to dismiss be **GRANTED**, that the petition be **DISMISSED**, and that this civil action be **CLOSED**.

# I. BACKGROUND

**A.    Procedural History**

This is Petitioner's third attempt at federal habeas corpus relief concerning his burglary conviction in the Superior Court of Richmond County on September 11, 2000. Wilkes v. Martin, CV 104-014 (S.D. Ga. Feb. 2, 2004) (*hereinafter* "First Federal Petition"); Wilkes v. Henderson, CV 108-017 (S.D. Ga. Feb. 1, 2008) (*hereinafter* "Second Federal Petition); Wilkes v. Owens, CV 109-149 (S.D. Ga. Nov. 30, 2009) (*hereinafter* "Third Federal Petition"). The First Federal Petition was occasioned by extensive delays Petitioner experienced in trying to obtain his trial transcript from the court reporter for use in his direct appellate proceedings. See generally CV 104-014, doc. nos. 1, 4. That case was dismissed prior to service on the respondents by the Honorable Dudley H. Bowen, Jr., United States District Judge, so that Petitioner could exhaust available state court remedies. Id. at doc. no. 4. Proceedings on the First Federal Petition concluded when the Eleventh Circuit Court of Appeals denied a Certificate of Appealability ("COA") to Petitioner. Id. at doc. no. 12.

Upon completion of his direct appellate proceedings in the state courts, Wilkes v. State, 604 S.E.2d 601 (Ga. Ct. App. 2004), Petitioner filed his Second Federal Petition in the midst of on-going state habeas proceedings. See generally CV 108-017, doc. nos. 16, 19. In that case, the undersigned directed service of the petition on the respondents on February 28, 2008. Id. at doc. no. 6. On April 22, 2008, the respondents filed a motion to dismiss for lack of exhaustion which noted that although there had been delays in processing Petitioner's state habeas petitions for various reasons, a state habeas hearing had been scheduled for May 20,

2008 (id. at doc. no. 8, Br., pp. 2-3).[1]  Interestingly, that hearing was requested by Assistant

Attorney General Jason Fisher less than one week before the filing of the motion to dismiss.[2]

Id. at doc. no. 10, pp. 5-6.  Prior to ruling on the motion to dismiss, the Court directed the

respondents to inform the Court of the outcome of the May 20th evidentiary hearing.  Id. at

doc. no. 14.  In a response filed by Mr. Fisher, the respondents explained that the at the end

of the hearing, the judge had orally ruled that he would deny relief, but "counsel requested

a reasonable period of time after receipt of the hearing transcript within which to prepare a

final order for the judge's signature."  Id. at doc. no. 15, p. 2.  Thus, as of October 7, 2008,

the respondents were awaiting the hearing transcript and maintained that the Second Federal

Petition should be dismissed for failure to exhaust state court remedies.  The undersigned

recommended that the motion to dismiss be granted, and by Order dated January 21, 2009,

the Honorable J. Randal Hall, United States District Judge, dismissed the Second Federal

---

[1]Petitioner filed two state habeas petitions. (Doc. no. 19, Resp. Exs. 2a, 2b, 5.)  The first petition, filed in 2002, was held in abeyance because Petitioner's direct appeal was pending.  (Id. at Resp. Exs. 3, 4.)  Although it appears as though there were three hearings on that first petition, (id. at Resp. Ex. 3, p. 54 and doc. no. 18, p. 3), Respondent did not submit a transcript of the third hearing held on July 21, 2003.  The second petition, filed in 2005, was transferred, nearly one year after initially filed, from Gwinnett County to Macon County because Petitioner had been transferred from Phillips State Prison to Macon State Prison.  (Id. at Resp. Exs. 5, 6.)  Before the May 20, 2008 hearing, Petitioner was apparently again transferred, this time to a prison in Baldwin County; however, the state habeas judge in Macon refused a second transfer.  (Id. at Resp. Ex. 9, pp. 4-8); see also CV 108-017, doc. no. 10.

[2]Mr. Fisher appears to be the same Assistant Attorney General who appeared at an earlier state habeas hearing on June 19, 2003.  (Doc. no. 19, Resp. Ex. 3.)  Thus, it seems as though Mr. Fisher, one of the Assistant Attorney Generals also appearing in the case *sub judice*, by virtue of his involvement with Petitioner's post-conviction pursuits dating back seven years or more, is well aware of the numerous delays encountered by Petitioner in his attempts to challenge his burglary conviction.

Petition. Id. at doc. no. 19. Proceedings on the Second Federal Petition concluded when the Eleventh Circuit Court of Appeals again denied Petitioner a COA. Id. at doc. no. 24.

On November 30, 2009, Petitioner filed his Third Federal Petition, along with a motion for a stay and abeyance and (doc. no. 4) and "Application for the Presumption of Correctness" (doc. no. 6). The undersigned originally recommended that the motion for a stay and abeyance be denied and that the petition be dismissed prior to service on Respondents because Petitioner had not received a ruling on his application for a certificate of probable cause ("CPC") to appeal the state habeas court's ruling. (Doc. no. 9.) However, upon objection from Petitioner that his CPC application had been pending for approximately two years (doc. no. 11), that recommendation was vacated, and on May 24, 2010, Respondents were directed to answer the petition (doc. no. 12).

On July 19, 2010, Respondents again moved to dismiss the petition for lack of exhaustion,[3] explaining that the application for a CPC had not been ruled upon because a final written order had not been entered by the state habeas court until June 28, 2010. (Doc. nos. 14, 15.) Thus, there had been no final judgment and record to transmit to the Georgia

------

[3]Respondents also filed a motion to intervene, in which Brian Owens, Commissioner of the Georgia Department of Corrections, was identified as the proper Respondent. (Doc. no. 16.) That motion has been granted by separate order. Furthermore, the Advisory Committee Notes to Rule 2 of the Rules Governing § 2254 Cases in the United States District Courts explain that the state Attorney General is an appropriate party respondent when the petitioner is attacking a sentence which will be carried out in the future or for which the petitioner is not incarcerated, on probation, or on parole. See also Hogan v. Hanks, 97 F.3d 189, 190 (7th Cir. 1996) ("A state's attorney general is a proper party only if the petitioner is not then confined, but expects to be taken into custody.") As the Commissioner is the proper Respondent and Petitioner is attacking the sentence for which he is incarcerated, Attorney General Thurbert E. Baker should be **DISMISSED** as an improper Respondent. For ease of reference, the Court will refer to Commissioner Owens as Respondent throughout the remainder of this Report and Recommendation.

Supreme Court for a ruling on the application for a CPC. (Doc. nos. 14, 15.) However, as a final order has now been entered, it appears as though the application for a CPC may now be ripe for final disposition.

Interestingly, it is again Mr. Fisher representing Respondent, and it was Mr. Fisher who prepared the final order that the state habeas judge signed on June 28, 2010. (Doc. no. 19, Resp. Ex. 8, p. 6.) Also of note, although Respondent had been specifically directed "to address in [his] answer the status of Petitioner's state habeas petition and the reasons for the state habeas court's apparent nearly two-year delay in issuing a final order," (doc. no. 12, p. 5 (emphasis added)), there was no explanation provided for the delay. The Court is particularly troubled that the state habeas transcript was apparently completed on February 9, 2009 (doc. no. 19, Resp. Ex. 9, p. 377), and it took over a year and four months for the entry of a final order from the state habeas court. Moreover, although the state habeas transcript has 377 pages, the actual transcription of the state habeas hearing on May 20, 2008 covers only 15 pages; the remainder of the transcript is composed of exhibits, including things like the trial transcript and appellate briefs. (Doc. no. 19, Resp. Ex. 9.) The Court observes a troubling pattern of failure by Respondent, through counsel, to move Petitioner's collateral proceedings along until forced into action by a looming deadline in federal court. The pattern is particularly troublesome in light of the fact that same Assistant Attorney General seems to have been involved with Petitioner's case in one form or another since 2003; unfortunately, a continuity of representation does not seem to have facilitated a prompt resolution to Petitioner's post-conviction proceedings.

## B.    Third Federal Petition

Having sorted through the tortuous procedural history of Petitioner's attempts to have his claims for federal habeas corpus relief heard, the Court now turns its attention to the pending motion to dismiss the Third Federal Petition, and the request to hold the petition in abeyance until Petitioner can exhaust his state court remedies.[4]

Petitioner freely acknowledges that he has not exhausted all of the claims raised in his Third Federal Petition.  (Doc. no. 17, p. 2 (arguing that Respondent's actions have "prevent[ed] Petitioner from exhausting his remaining unexhausted claims").)  Moreover, although Respondent contends that "all of Petitioner's claims are unexhausted," (doc. no. 14, Br., p. 3), Judge Hall has already determined that at least one of Petitioner's claims - that trial counsel was ineffective for failing to properly argue Petitioner's motion to suppress - has been exhausted because it was raised before, and rejected by, the Georgia Court of Appeals.[5] CV 108-017, doc. no. 16, p. 9 & n.4, *adopted by* doc. no. 19.  Thus, the Court need not parse

---

[4]The "Application for the Presumption of Correctness" is but a thinly veiled brief in support of Petitioner's habeas corpus claims.  The requested relief makes little sense: "[F]or the foregoing supporting facts and the preponderance of the evidence from certified state court records of this case presented by the petitioner and the respondent is sufficient enough for the District Court, to apply the presumption of correctness to the state court's unreasonable determinations made in this case that is erroneous as a matter of law."  (Doc. no. 6, p. 16.)  Practically speaking, Petitioner is asking the Court to accept his version of the facts as true and grant him a writ of habeas corpus.  However, as discussed in detail herein, the Court is recommending that this case be dismissed based on Petitioner's failure to exhaust his state court remedies.  Therefore, this brief / "motion" asking that Petitioner be granted federal habeas corpus relief should likewise be **DENIED**.

[5]Both the Second Federal Petition and the Third Federal Petition allege that Petitioner was "denied an opportunity for a full and fair litigation of [Petitioner's] Fourth Amendment Claim in his Motion to Suppress in State Trial Court . . ." because the motion was "erroneously and incorrectly argued."  CV 108-017, doc. no. 1, p. 6; CV 109-149, doc. no. 1, p. 6.

6

the particulars of the six grounds for relief raised in the Third Federal Petition against the claims raised on direct appeal and in Petitioner's state habeas petitions; indeed, this parsing has already been undertaken in prior Reports and Recommendations entered by this Court in which Petitioner raised his federal claims in similar, if not exactly the same, language as is used in the current petition. Instead, relying on Petitioner's admission and Judge Hall's prior determination, the Court will proceed on the premise that the Third Federal Petition contains both exhausted and unexhausted claims.

## II. DISCUSSION

### A. Exhaustion Rules Explained

Effective April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, amended the statute governing habeas corpus petitions for state prisoners seeking relief in the federal courts. The AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss habeas claims that the petitioner has a right to raise, by any available procedure, in state court. 28 U.S.C. § 2254(b)(1)(A) & (c). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by *any* available procedure, the question presented." Id. § 2254(c) (emphasis added). In reference to this requirement, the Supreme Court has held that a state inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the state inmate's federal claims. Castille v. Peoples, 489 U.S. 346, 351 (1989). "In other words, the state prisoner

must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

Moreover, giving the state courts an opportunity to act on a petitioner's claims includes allowing the state courts to complete the appellate review process. As the Supreme Court explained:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

Id. at 845; see also Pope v. Rich, 358 F.3d 852, 853 (11th Cir. 2004) (per curiam) (holding that a petitioner's "failure to apply for a certificate of probable cause to appeal the denial of his state habeas petition to the Georgia Supreme Court mean[t] that [a petitioner] . . . failed to exhaust all of his available state remedies"). This "one full opportunity" includes pursuing discretionary review with the highest available appellate court where the highest court of the state has not opted out of this requirement.[6] O'Sullivan, 526 U.S. at 845. However, the exhaustion doctrine does not require a petitioner to seek collateral review in state courts of issues raised on direct appeal. Walker v. Zant, 693 F.2d 1087, 1088 (11th Cir. 1982).

Notably, however, a federal habeas court in rare circumstances may deviate from the exhaustion requirement, such as in cases where the delay in the state courts is unreasonable or otherwise unjustified. Generally, as a matter of comity, the state courts must be afforded

---

[6]In Georgia, on direct appellate review, "'a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies' . . . ." Hills v. Washington, 441 F.3d 1374, 1375 (11th Cir. 2006) (per curiam) (quoting Ga. Sup. Ct. R. 40).

a fair opportunity to hear claims raised in a habeas corpus petition challenging custody resulting from a state court judgment. Picard v. Connor, 404 U.S. 270, 275 (1971). However, "[c]omity does not require that the federal courts decline to exercise jurisdiction in the face of allegations that the state courts have been presented with the merits of a claim for habeas corpus relief and have, for one reason or another, refused or been unable to act upon the claim." St. Jules v. Beto, 462 F.2d 1365, 1366 (5th Cir. 1972) (*per curiam*). In this regard, "[a] federal habeas petitioner need not wait until his state petitions for relief are exhausted, if the state court has unreasonably or without explanation failed to address petitions for relief." Hollis v. Davis, 941 F.2d 1471, 1475 (11th Cir. 1991); see also Reynolds v. Wainwright, 460 F.2d 1026, 1027 (5th Cir. 1972)[7] (*per curiam*) (holding that an inordinate delay can, under certain circumstances, excuse exhaustion).

Nevertheless, when dealing with delays in the state judicial process, the exhaustion requirement may not be set aside lightly. See, e.g., Parker v. Kelchner, 429 F.3d 58, 62 (3d Cir. 2005) ("The exhaustion requirement is not one to be overlooked lightly." (citation omitted)). A critical issue in determining whether to excuse the exhaustion requirement where there have been delays in the state judicial process is whether "the state court has unreasonably or without explanation failed to address petitions for relief." Hollis, 941 F.2d at 1475; Reynolds, 460 F.2d at 1027 (recognizing that "inordinate delay in the State post-conviction process can, in an appropriate case, render the state remedy ineffective to protect a prisoner's rights"). Of course, the Court is aware that the sheer passage of time, in and of

----

[7] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

9

itself, does not always serve to obviate the exhaustion rule. Notwithstanding a lengthy delay, the Court should not excuse a failure to exhaust where: (1) the delay is attributable to the petitioner, rather than the state; or (2) the delay may be justified or excused because of the unique circumstances of the case. Cook v. Florida Parole & Probation Comm'n, 749 F.2d 678, 680 (11th Cir. 1985). Similarly, even after a long delay has passed, if it is clear that the state court has awakened to its duties and visible progress toward disposition of the case is being made, the federal court should be hesitant to interfere. See, e.g., Slater v. Chatman, 147 F. App'x 959, 960 (11th Cir. 2005) (*per curiam*).

In addition, the AEDPA contains two significant changes bearing on the exhaustion requirement. First, the AEDPA eliminates a district court's ability to infer a state's waiver of exhaustion from the state's failure to expressly invoke the exhaustion requirement. 28 U.S.C. § 2254(b)(3). Under the revised statute, a waiver can be found only if the state, through counsel, expressly waives the requirement. Id. Second, the AEDPA confers discretion upon the district courts to deny a habeas petition on the merits notwithstanding the petitioner's failure to exhaust the remedies available in state court. 28 U.S.C. § 2254(b)(2). When read in conjunction with the exhaustion requirement contained in § 2254(b)(1) and the waiver requirement contained in § 2254(b)(3), § 2254(b)(2) creates a confusing statutory framework within which the district courts must consider habeas petitions. Hoxsie v. Kerby, 108 F.3d 1239, 1243 (10th Cir. 1997) (recognizing § 2254(b)(2), standing alone, does not contain the standard for determining when a federal court should dismiss a petition on the merits instead of insisting on exhaustion); Gaylor v. Harrelson, 962 F. Supp. 1498, 1499-1500 (N.D. Ga. 1997) (same).

In deciding whether to require exhaustion or to address the merits, the Supreme Court's decision in Granberry v. Greer, 481 U.S. 129 (1987), provides some insight. In Granberry, the Supreme Court stated:

> If, for example, the case presents an issue on which an unresolved question of fact or of state law might have an important bearing, both comity and judicial efficiency may make it appropriate for the court to insist on complete exhaustion to make sure that it may ultimately review the issue on a fully informed basis. On the other hand, if it is perfectly clear that the applicant does not raise a colorable federal claim, the interests of the petitioner, the warden, the state attorney general, the state courts, and the federal courts will all be well served . . . if . . . the district court denies the habeas petition.[8]

Id. at 134-35; see also Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992) (applying Granberry). Based on Granberry, the question of whether to require exhaustion in lieu of addressing the merits turns on whether it is "perfectly clear" that the petitioner has failed to state "even a colorable federal claim." Granberry, 481 U.S. at 134-35. In other words, if there is arguably a colorable claim, the Court should normally invoke the exhaustion requirement and dismiss the petition without prejudice.

Finally, if the district court finds that a petition is a mixed petition, in that it contains both exhausted and unexhausted claims, it has the option of issuing a stay and holding the petition in abeyance to allow the petitioner to return to the state court to exhaust his remedies as to the unexhausted claims. Rhines v. Weber, 544 U.S. 269, 275-79 (2005); Ogle v. Johnson, 488 F.3d 1364, 1370 (11th Cir. 2007). The Eleventh Circuit has summarized the

---

[8]The Court recognizes that § 2254(b)(3) overrules Granberry to the extent that the state no longer may be deemed to waive the exhaustion requirement. The quoted passage, however, remains good law, and indeed, the policies underlying the passage are directly incorporated into § 2254(b)(2).

requirements of Rhines as follows: "[a] district court should grant a stay and abeyance if (1) the petitioner had 'good cause' for failing to exhaust the claims in state court; (2) the unexhausted claims are 'potentially meritorious;' and (3) 'there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.'" Thompson v. Sec'y for the Dep't of Corr., 425 F.3d 1364, 1365-66 (11th Cir. 2005) (*per curiam*) (quoting Rhines, 544 U.S. at 277-78). However, because the stay and abeyance procedure has the potential to frustrate the "AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings" and undermining the "AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition," the stay and abeyance procedure should only be used in limited circumstances. Rhines, 544 U.S. at 277. If the district court determines that a stay and abeyance is not the appropriate avenue on which to proceed, in lieu of dismissing the entire petition, the court also has the option - "if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief" - of severing any unexhausted claims from the petition and proceeding with the exhausted claims. Id. at 278.

## B. Petitioner's Exhausted and Unexhausted Claims

As noted above, Judge Hall has already determined in a prior proceeding that Petitioner has exhausted at least one of his federal claims concerning allegedly ineffective assistance of counsel with respect to the manner in which a motion to suppress was argued before the trial court. See CV 108-017, doc. no. 16, p. 9, *adopted by* doc. no. 19. Moreover, Petitioner acknowledges that he has raised unexhausted claims in his Third Federal Petition

12

(doc. no. 17, p. 2), but he contends that his petition should be held in abeyance while he exhausts his remaining claims via the application for a CPC that is pending before the Georgia Supreme Court (doc. no. 4).

Because Petitioner's Third Federal Petition contains exhausted and unexhausted claims, it is a so-called "mixed petition." However, having considered the three necessary requirements of Rhines for issuing a stay, the Court concludes that this mixed petition should be dismissed and that Petitioner's exhausted claims should not be held in abeyance.

Turning first to the last requirement of Rhines, the Court must consider whether Petitioner engaged "in abusive litigation tactics or intentional delay." Rhines, 544 U.S. at 278. While there can be no doubt that Petitioner's post-conviction proceedings have not progressed expeditiously - many times for reasons beyond Petitioner's control (three years for preparation of trial transcript, one year and four month delay in preparation of rudimentary state habeas order) - upon review of the transcript of the May 20, 2008 habeas transcript, it is clear that Petitioner hindered his own cause by refusing to participate. (Doc. no. 19, Resp. Ex. 9.) Petitioner repeatedly argued that the state habeas court in Macon did not have jurisdiction over his claims because (1) he had filed a federal habeas corpus petition; and (2) he had been transferred from Macon State Prison to a prison in Baldwin County.[9] (Id.) However, at the time of the May 20, 2008 hearing, Petitioner had already

---

[9]To the extent Petitioner opposes the motion to dismiss on the grounds of alleged irregularities with the state habeas proceedings concerning the location of where the hearing was held (doc. no. 17, pp. 3-4), the Court notes that this argument misses the mark. As the Eleventh Circuit has explained, "[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief." Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004). Thus, even if the Court were to find a problem with where the May 20th hearing was

been informed by this Court of the exhaustion requirement when his First Federal Petition was dismissed in 2004. CV 104-014, doc. no. 1, *adopted by* doc. no. 4. Petitioner also knew that the respondents in that case had moved to dismiss his pending Second Federal Petition on April 22, 2008, for failing to exhaust state court remedies (id. at doc. no. 8), but he was clearly unhappy with the scheduling of his long-sought after state habeas hearing in a forum that he did not prefer (id. at doc. no. 10.)

Thus, Petitioner was well aware that he must utilize the state courts to exhaust his claims before coming to federal court, yet he attempted to use a pending, unexhausted federal petition as a shield to block the presentation of his claims to a state forum that he did not prefer. Petitioner should not be able to benefit from a stay and abeyance when he refused participation in the very proceedings that he knew needed to be completed before he could properly have his claims heard in federal court. Thus, the Court concludes that Petitioner cannot meet the third prong of Rhines.[10]

---

held - which it expressly declines to address - that would have no bearing on whether Petitioner's federal claims should now be dismissed. In any event, as evidenced by the delay when the state habeas petition filed in Gwinnett County in 2005 was transferred to Macon County in 2006, had the petition been transferred from Macon County to Baldwin County as Petitioner requested, the case would only have been further delayed.

[10]To the extent that the Court concluded in its now-vacated, December 28, 2009 Report and Recommendation that there was no indication that Petitioner had engaged in "intentionally dilatory litigation tactics," (doc. no. 9, p. 8), at that time, the Court did not have the benefit of the transcripts of the May 20, 2008 hearing that show Petitioner's refusal to participate in the proceedings.

As Petitioner cannot meet all three prongs of <u>Rhines</u>, the Court need not make definitive findings on the remaining two prongs.[11] However, given the problems outlined in section I, *supra*, with the timeliness of the progression of Petitioner's post-conviction proceedings, the <u>Rhines</u> prong concerning "good cause" for failure to exhaust merits further comment. Petitioner strenuously argues that he has shown "good cause" for his failure to exhaust because he has been frustrated at every turn by the lack of cooperation from Respondent. There can be no doubt upon reading the transcript from the June 19, 2003 state habeas hearing that the state habeas judge had serious questions about the impact on Petitioner's rights by the delay in the preparation of the trial transcript and that he admonished the respondent in that case, represented by Mr. Fisher, to do something to get the proceedings moving.[12] (Doc. no. 19, Resp. Ex. 3.) Since that time, it appears that little has proactively been done to make sure that early delays in the direct appellate proceedings were not repeated in the collateral proceedings. To the contrary, as set forth in detail above, it appears to the Court that Respondent has done nothing to move Petitioner's proceedings along until faced with a looming federal deadline. Then, suddenly, hearings are scheduled, and final orders are entered. The Court expects that should the District Judge adopt this

---

[11]Although the Court will not make any findings on whether Petitioner's unexhausted claims may be "potentially meritorious," the Court notes that Petitioner's failure to make a record in the state habeas proceedings does not help his cause. The Court also notes that the state habeas judge warned Petitioner that his failure to participate in the proceedings "might affect whether or not . . . his claims in federal court would be defaulted." (Doc. no. 19, Resp. Ex. 9, p. 10.)

[12]The state habeas judge succinctly stated, "But what - what [Petitioner] has run into is limbo based on his inability to get anything to move, and he's not in a position to get it to move. Society owes him, as a litigant, movement of some sort or an explanation for their not being movement of some sort." (Doc. no. 19, Resp. Ex. 3, p. 29.)

Court's recommendation for dismissal, Respondent, via his legal counsel (including Mr. Fisher), will make sure that there are no further undue delays in the proceedings related to Petitioner's application for a CPC.

In any event, as explained above, the mere passage of time is not sufficient to excuse the exhaustion requirement. Petitioner's first state habeas petition was properly held in abeyance while his direct appeal was pending. Petitioner's second state habeas petition was filed in March 2005, and it appears that Petitioner's transfer between prisons contributed to the delay in holding the May 20, 2008 evidentiary hearing. While there does not appear to be any explanation for the delay from February 9, 2009 when the hearing transcript was prepared, until June 28, 2010, when the final order from the state habeas court was signed, it does appear that progress is now being made toward an ultimate resolution of the matter in state court. As Respondent has now, again, been awakened to his duties, the Court is hesitant to interfere. Slater, 147 F. App'x at 960; cf. Cook, 749 F.2d at 679-80 (three and one half year delay in ruling on prisoner's state court post-conviction motion for relief not unreasonable under circumstances and therefore refusing to excuse exhaustion requirement in federal habeas proceedings); but cf. Breazeale v. Bradley, 582 F.2d 5, 6 (5th Cir. 1978) (holding that state remedy was ineffective and exhaustion excused where state habeas petition was completely dormant for over one year, and state offered no reason for the delay).

Thus, the Court finds that it would not be proper to interfere and that the exhaustion requirement should not be set aside in this case.[13]

As Petitioner cannot meet the three prongs of Rhines, the Court concludes that under these circumstances, issuing a stay and holding the Third Federal Petition in abeyance in this case would frustrate and undermine the goals of the AEDPA. Not only would it delay the resolution of these federal proceedings, but it would undermine the goal of streamlining federal habeas proceedings. Rhines, 544 U.S. at 277. Furthermore, the Court is unwilling to recommend rewarding the tactics employed by Petitioner in refusing to participate in the state habeas proceedings when he had already been informed in 2004 by this Court of the federal exhaustion requirement (see CV 104-014, doc. no. 1, *adopted by* doc. no. 4) and had been reminded of the federal rules by the state habeas judge (doc. no. 19, Resp. Ex. 9, p. 10). Such a recommendation would decrease the incentive to exhaust claims in state court prior to coming to federal court. See Rhines, 544 U.S. at 277. Nor do the circumstances of this case, particularly now that a final order has been entered by the state habeas court, warrant setting aside the exhaustion requirement. Thus, Petitioner's motion for a stay and abeyance should be denied, and Respondent's motion to dismiss should be granted.

### III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Attorney General Thurbert E. Baker be **DISMISSED** as an improper Respondent. The Court

---

[13]Because of the overlap of Petitioner's post-conviction direct appellate proceedings and collateral attack proceedings, there appears to be no danger of running afoul of the AEDPA's one-year statute of limitations, 28 U.S.C. § 2244(d), in recommending denial of a stay and abeyance. See Rhines, 544 U.S. at 275.

also **REPORTS** and **RECOMMENDS** that Petitioner's motion for a stay and abeyance and "Application for the Presumption of Correctness" be **DENIED**, that Respondent's motion to dismiss be **GRANTED**, that the petition be **DISMISSED**, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 3rd day of August, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE